# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BRYON L. BRISCO, SR.,

    Petitioner,

v.

PICKAWAY CORRECTIONAL
INSTITUTION,

    Respondent.

Case No. 2:18-cv-1550
Judge George C. Smith
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

### I. Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 1} Bryon L. Brisco, Sr., is appealing from his multiple convictions following a jury trial. He assigns three errors for our consideration:
>
> I. The Count 2 felony-murder conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence.
>
> II. The County 4 felony-involuntary-manslaughter conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence.
>
> III. The Count 5 tampering-with-evidence conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence.

{¶ 2} Since all three assignments of error involve an analysis of the evidence presented at trial, we begin with a review of that evidence.

{¶ 3} Bryon's case began with an indictment which charged him with murder, specifically the murder of his wife, Sofia Brisco. Murder in Ohio can be either the purposeful killing of another or the killing of another as a result of the commission of certain other felonies ("felony murder"). The jury rejected the State of Ohio's theory that Bryon purposely caused the death of his wife and found Bryon guilty of the lesser included offense of reckless homicide. However, the jury also found Bryon guilty of both felony murder and involuntary manslaughter. Counsel for Bryon argues that the jury went astray in its considering the evidence.

{¶ 4} Bryon and Sofia had a long history of using crack cocaine. Four days before the shooting of Sofia, they began a binge of crack use. When the cocaine ran out, Sofia texted Bryon threatening to prostitute herself in order to get money for more crack. Understandingly Bryon was against that, especially if Sofia had sex with someone who knew both of them.

{¶ 5} Sofia, who had been walking in the neighborhood, returned to the apartment she shared with Bryon, Bryon's son, and the son's girlfriend. Sofia and Bryon brainstormed about ways to get money to buy more crack, but their attempts to get loans failed. Finally they smoked marijuana and went to bed.

{¶ 6} The next morning, the efforts to get money to obtain crack resumed. Sofia apparently decided to prostitute herself to get some money. Bryon was upset about that and tried to prevent her from leaving the apartment.

{¶ 7} According to Bryon, Sofia yelled at Bryon that if she wanted to prostitute herself it was her body and she could do what she wanted with it. What she wanted more than anything was crack cocaine. A neighbor overheard a verbal confrontation between the two.

{¶ 8} Apparently Bryon had gotten a gun to protect them from some drug dealers who were upset about past drug debts not being paid. Bryon testified that Sofia got the gun in an apparent attempt to force Bryon to let her leave their apartment. He stated that the two fought over control of the gun and it went off. Sofia was struck and later died from the wound.

{¶ 9} Because of his past criminal record, Bryon could not legally have a gun. He was under a legal disability. On appeal, his counsel does not contest his guilt as to that charge.

{¶ 10} There seems to be little doubt that Bryon was angry with Sofia before the gun went off. How much of that was personal and how much was related to the consumption of crack cocaine is impossible to tell at this juncture. After the shot,

Bryon made attempts to save Sofia by applying pressure to her wound with towels. The bullet perforated Sofia's heart and right lung.

{¶ 11} Part of the trial involved the need to evaluate whether or not Bryon was truthful in his rendition of the facts as to the instant the gun went off. Sofia's DNA was on the gun but Bryon's was not. The wound was not a contact wound, meaning the gun barrel was not in contact with Sofia or her clothing when it discharged. However, there was also no stippling on Sofia's clothing. Stippling would be expected if the gun barrel was within two feet of Sofia and pointed toward her when it discharged. Obviously the gun barrel was pointed toward Sofia when the gun discharged. The lack of stippling calls into question Bryon's claim that the two were struggling over the gun when the gun went off.

{¶ 12} The jury found that they were not convinced beyond a reasonable doubt that Bryon had purposely caused the death of Sofia. However, the jury found beyond a reasonable doubt that Bryon was guilty of reckless homicide in violation of R.C. 2903.041.

{¶ 13} The statute reads:

(A) No person shall recklessly cause the death of another or the unlawful termination of another's pregnancy.

(B) Whoever violates this section is guilty of reckless homicide, a felony of the third degree.

{¶ 14} Bryon was also found guilty of murder in violation of R.C. 2903.02(B). That statute reads:

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

(C) Division (B) of this section does not apply to an offense that becomes a felony of the first or second degree only if the offender previously has been convicted of that offense or another specified offense.

(D) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code.

{¶ 15} The underlying felony, for purposes of R.C. 2903.02(B), was felonious assault, in violation of R.C. 2903.11(A). R.C. 2903.11(A) reads:

(A) No person shall knowingly do either of the following:

> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

*State v. Brisco*, 10th Dist. No. 16AP-759, 2017 WL 4422979, at *1-2 (Ohio Ct. App. Oct. 5, 2017). On October 5, 2017, the appellate court affirmed the judgment of the trial court. *Id.* On March 14, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Brisco*, 152 Ohio St.3d 1423 (Ohio 2018).

On June 28, 2018, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 6, PAGEID # 255.) On August 2, 2018, the appellate court denied the Rule 26(B) application as untimely. (PAGEID # 278.) Petitioner apparently did not file an appeal to the Ohio Supreme Court.[1]

On November 30, 2018, Petitioner filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of trial counsel because his attorney failed to call Detective J. Fulton as a witness, and denied the effective assistance of appellate counsel based on his attorney's failure to file appellate briefs or consult with him regarding the appeal (claim one); that the state appellate court improperly denied his Rule 26(B) application, in violation of due process and equal protection (claim two); and that his convictions violate the Double Jeopardy Clause (claim three). It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## II. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of

---

[1] Petitioner states that he attempted to file an appeal, but due to a delay in mailing by prison staff, it arrived one day late. (ECF No. 1, PAGEID # 5-6.)

habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's

failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

In claim one, Petitioner asserts that he was denied the effective assistance of trial counsel. In claim three, Petitioner asserts that his convictions involve conflicting verdicts of guilt thereby violating the Double Jeopardy Clause. Petitioner failed to raise either of these claims on direct appeal, where he was represented by new counsel. Further, he may now no longer do so, under Ohio's doctrine of *res judicata*. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.' " *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018) (citing *Hill v. Mitchell*, No. 1:98-CV-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept.

27, 2006) (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967))). Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise those claims on direct appeal, and, consequently, the first prong of the *Maupin* test is satisfied. Moreover, Ohio courts have consistently relied upon the doctrine of *res judicata* to refuse to review the merits of procedurally barred claims. *See, e.g., State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). Further, the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Turning to *Maupin's* independence prong, under the circumstances presented here, Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the undersigned finds that the first three *Maupin* factors are satisfied.

Petitioner may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default.

7

*Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to establish meet this standard here.

As cause for his procedural default, and in habeas corpus claim one, Petitioner asserts the denial of the effective assistance of appellate counsel. However, the state appellate court denied Petitioner's Rule 26(B) application for failure to establish good cause for his untimely filing. Therefore, this claim cannot serve as cause for Petitioner's default, because Petitioner thereby likewise has procedurally defaulted his claim of the denial of the effective assistance of appellate counsel. *See Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).

As cause for this procedural default, Petitioner states that the prison does not promptly deliver his legal mail. Government inaction, such as a delay in mailing a prisoner's court filings, may constitute cause for a prisoner's failure to comply with a state's procedural rule. *See Foster v. Warden, Chillicothe Correctional Inst.*, 575 F. App'x 650, 654 (6th Cir. 2014) (citing *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013); *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003)). However, Petitioner's Rule 26(B) application was due on or before January 4, 2018. He did not file his application until June 28, 2018. (*See Memorandum Decision*, ECF No. 6, PAGEID # 278.) Petitioner does not allege, and the record does not reflect, that this lengthy delay was the fault of the prison's mailing system.[2] To the contrary, as cause for his untimely

---

[2] Petitioner also argues at length that he attempted to file a timely appeal of the appellate court's August 2, 2018 decision denying his Rule 26(B) application to the Ohio Supreme Court, but the prison's mailing system delayed that filing. (*See Traverse*, Doc. 10, PAGEID # 1799, 1805-06.) This Court need not address the issue, however, because Petitioner waived his claim of the denial of the effective assistance of appellate counsel when he filed an untimely Rule 26(B) application in the state appellate court.

filing in the state appellate court, Petitioner stated that he had limited access to the prison's law library and legal computers, and that he did not know how long it would take the prison's mail room and cashier's office to process his cash withdrawal slip to pay for postage, or for delivery of his mail. (ECF No. 6, PAGEID # 255.) The state appellate court indicated that he apparently filed an untimely Rule 26(B) application "as a result of his misunderstanding of the filing deadline." (*Memorandum Decision*, ECF No. 6, PAGEID # 278.) Courts have held repeatedly that a petitioner's *pro se*, incarcerated status, limited access to the prison law library, or ignorance of the law and state procedural requirements do not constitute cause sufficient to excuse a procedural default. *See, e.g., Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (citing *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)); *Crosby v. Warden, London Corr. Facility*, No. 1:12–cv–523, 2013 WL 5963136, at *5 n. 2 (S.D. Ohio Nov. 7, 2013).

Finally, the United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default*.*" *Murray*, 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally-barred habeas petition. *Schlup,* 513 U.S. at 317. The actual innocence claim in *Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U. S. 390, 404 (1993)).

9

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). In *Souter,* the Sixth Circuit offered the following explanation:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ +] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards.

### III.  Claim Two

In claim two, Petitioner asserts that the state courts unconstitutionally arbitrary and inconsistently enforce the good cause provision of Ohio's Rule 26(B), violating due process and equal protection. (*Petition*, ECF No. 1, PAGEID # 12-13.) This claim does not provide a basis for federal habeas corpus relief. *See Wilson v. Hurley*, 382 F. App'x 471, 476-77 (6th Cir. 2010) (citing *Monzo v. Edwards*, 281 F.3d 586, 578 (6th Cir. 2002) (rejecting argument that there is no uniformity in the application of Rule 26(B)'s good cause requirement) (other citations omitted); *Contrearus v. Hooks*, No. 3:15-cv-0783,

2016 WL 3976383, at *9 (N.D. Ohio July 1, 2016) (allegations regarding the state appellate court's good cause determination under Rule 26(B) is not cognizable on habeas review) (citation omitted). A petitioner' claim "must directly dispute the fact or duration" of his confinement in order to provide a basis for relief. *See Ysreal v. Warden, Chillicothe Corr. Inst.*, No. 1:13-cv-34, 2014 WL 7185264, at *6 (S.D. Ohio Dec. 16, 2014) (citing *Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986) (citing *Prieser v. Rodriguez*, 411 U.S. 475, 500 (1973)). "A ground for relief that challenges the correctness of a state judicial proceeding and does not dispute the detention itself is not cognizable." *Id.* (citing *Kirby*, 794 F.2d at 247–48. Moreover, "'the writ [of habeas corpus] is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.'" *Cassano v. Bradshaw*, No. 2018 WL 3455531, at *48 (N.D. Ohio July 18, 2018) (quoting *Kirby*, 794 F.2d at 247) (following *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).

> A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic ] provide a basis for federal habeas relief" (citing *Kirby,* 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). Despite Petitioner's argument to the contrary, the Sixth Circuit has determined that Ohio's Rule 26(B) application involves a collateral proceeding. *See McClain v. Kelly*, 631 F. App'x 422, 429 (6th Cir. 2015).

### IV. Disposition

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

                                            /s/ *Chelsey M. Vascura*
                                            CHELSEY M. VASCURA
                                            UNITED STATES MAGISTRATE JUDGE